FILED

2010 May-11  PM 12:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TAMAR M. BROCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:09-CV-0799-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION[1]

Plaintiff Tamar M. Brock ("Ms. Brock") seeks review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), under 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), who

---

[1] The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's RFC determinations from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RCF finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same); *Estes v. Astrue*, No. 5:09-CV-01043-VEH, (Docs. 12, 13) (N.D. Ala. Apr. 16, 2010) (same); *Shelton v. Astrue*, No. 5:09-CV-01253-VEH, (Docs. 8, 9) (N.D. Ala. Apr. 26, 2010) (same).

denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2]   Ms. Brock timely pursued and exhausted her administrative remedies.  This case is ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

On October 24, 2005, Ms. Brock applied for disability status, DIB, and SSI, allegedly commencing on February 28, 2005.  (Tr. 69).  Ms. Brock basis her disability claim upon the following conditions:   systemic lupus erythematosus versus connective tissue disorder, thyroiditis, fibromyalgia, bipolar disorder, cognitive disorder, and anxiety disorder.  (Tr. 26).

The Commissioner denied her claim on June 22, 2006.  (Tr. 50).  Ms. Brock timely requested a hearing before an administrative law judge ("ALJ"), which was held November 5, 2007.  (Tr. 57, 289).  At the time of the hearing, Ms. Brock was 32 years old.  (Tr. 295).  The ALJ denied her claim on September 15, 2008.  (Tr. 16-34).

On October 8, 2008, Ms. Brock sought review of the ALJ's decision by the

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Office of Disability Adjudication and Review (the "Appeals Council"). (Tr. 10). The Appeals Council denied the request on February 24, 2009, making the ALJ's opinion "the final decision of the Commissioner" in her case. (Tr. 4).

On April 24, 2009, Ms. Brock filed this appeal. (Doc. 1). This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits.

## STANDARD OF REVIEW

This court will determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence," and will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, 703 F.2d at 1239. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB, SSI, and establish disability status, a claimant must be disabled under the SSA and the Regulations promulgated thereunder.[4]   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must establish a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Commissioner employs the following five-step sequential evaluation, to determine whether a claimant is disabled:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform his past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

_____

[4]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 12, 2010.

4

20 C.F.R. § 404.1520(a)(4)(i-v); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,*189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Ms. Brock had not engaged in substantial gainful activity since her alleged onset date of February 28, 2005. (Tr. 25, 32 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the 'severe' impairments of systemic lupus erythematosus versus connective tissue disorder, thyroiditis and fibromyalgia."[5] (Tr. 26). Accordingly, Ms. Brock satisfied the second

---

[5] The court notes that the ALJ inconsistently stated later in his opinion that it appeared that Ms. Brock's "thyroid condition and resulting symptoms had resolved within the 12 month durational requirement" and that her severe impairments were

step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

While the ALJ considered Ms. Brock's bipolar, cognitive, and anxiety disorders, he determined that they  "impose no more than minimal restrictions" and classified them as non-severe.  (Tr. 26).

At step three, the ALJ determined that Ms. Brock did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 57, 32 ¶ 3).  Ms. Brock does not challenge this third level determination on appeal.

The ALJ then evaluated Ms. Brock's residual functional capacity  ("RFC") at step four, and the claimant was found to have the ability "to perform her past relevant work."  (Tr. 25).  More specifically,  the ALJ described Ms. Brock's work-related

───────────────

limited to lupus and polyarthralgias.  (Tr. 30, 32 ¶ 3).  Therefore, it is unclear from the ALJ's ruling which of Ms. Brock's conditions he classified as severe versus non-severe.  While this inherent ambiguity within the ALJ's decision would not necessarily warrant a remand by itself, this lack of clarity certainly lends additional support for remanding the case.  *See, e.g., McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("The review must take into account and evaluate the record as a whole.") (citing  *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88, 71 S. Ct. 456, 463-65, 95 L. Ed. 456 (1951)); *see also Martin*, 748 F.2d at 1031 ("This standard of review is not a rubber stamp for the Secretary's decision and involves more than a search for evidence supporting the Secretary's findings. We must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Secretary's findings.") (emphasis added).

abilities as follows:

> The claimant retains the residual functional capacity to perform sedentary work in a temperature controlled environment. She can occasionally climb and use her upper extremities for pushing/pulling. She can never drive or work around unrestricted heights. She requires the use of a cane for balance and ambulation. Her pain and fatigue are reasonably expected to impose no greater than mild to moderate functional restrictions on her ability to engage in the basic work activities described in 20 C.F.R. §§ 404.1521 and 416.921. The claimant's testimony is credible only to the extent that it is consistent with these limitations.

(Tr. 30, 33 ¶ 6).[6]

Thus, based upon the above description, the ALJ concluded that Ms. Brock could meet the demands of a reduced range of sedentary work. Against this backdrop and in reliance upon testimony from a vocational expert, the ALJ then determined that Ms. Brock did not suffer from impairments preventing her from performing her past relevant work as a computer analyst. (Tr. 31, 33 ¶¶ 7, 8).

------

[6] Sedentary work is defined as:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

It was unnecessary for the ALJ to continue to step five of the sequential analysis due to his finding that Ms. Brock was able to engage in past relevant work. (Tr. 31); *see also Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) ("If a Social Security claimant 'can still do [the] kind of work' he has done in the past, he will be found not disabled.") (citations omitted).  Accordingly, the ALJ concluded Ms. Brock was not disabled as defined by the SSA, at any time from February 28, 2005, through September 15, 2008, the date of the ALJ's decision.  (Tr. 31-32).

## <u>ANALYSIS</u>

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7]

In this appeal, Ms. Brock raises several different issues.  (*See generally* Doc. 9).  One of Ms. Brock's challenges relates to the ALJ's rejection of Dr. Porter's consultative opinion that "relying upon Ms. Brock's self-report and behaviorial

---

[7]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

observations" she "is not capable of managing routine work stress/tasks or working

cohesively with others sufficient to maintain gainful employment." (Tr. 175; *see also*

Doc. 9 at 10 (citing Tr. 175)).   Dr. Porter tested Ms. Brock's global assessment of

functioning, which resulted in a score of 46.  (*Id.*).  Dr. Brock also  reported that he

"d[id] not suspect that Ms. Brock is malingering or feigning psychiatric problems."

(Tr. 175).

The court turns to the ALJ's rejection of Dr. Porter's opinion about Ms.

Brock's ability to work given his mental assessment of her coupled with the lack of

any underlying medical opinion in support of the ALJ's RFC determination that Ms.

Brock is capable of performing a reduced range of sedentary work, and agrees with

Ms. Brock that, under the circumstances of her case, the ALJ committed reversible

error.[8]

## I.   IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL AND MENTAL CAPACITIES EVALUATION BY A PHYSICIAN, THE ALJ'S RFC DETERMINATION THAT MS. BROCK CAN PERFORM A REDUCED RANGE OF SEDENTARY WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The ALJ stated that he based his RFC determination "upon the findings of

claimant's treating and examining sources, documented precipitating and aggravating

---

[8] As a result, the court does not reach the merits of the other issues presented
on appeal.

factors, prescribed medication, treatment, functional restrictions, daily activities, and work record." (Tr. 30). However, nowhere within his decision did he point to a specific record or document, much less a medical opinion that substantiates his conclusion about Ms. Brock's ability to perform a reduced range of sedentary work with certain non-exertional restrictions given her severe impairments.[9]

Later in his decision, the ALJ referenced the consultative examination conducted by Dr. Ballard as supportive of his RFC finding. (Tr. 31). In particular, the ALJ reasoned that "[w]hile Dr. Ballard noted some physical abnormalities, she also placed no restrictions on the claimant's ability to perform work related activities." (*Id.*).

The court has studied the records provided by Dr. Ballard relating to her examination of Ms. Brock on January 7, 2006. (Tr. 167-71). Dr. Ballard, a "[p]hysical [m]edicine and [r]ehabilitation" examiner (Tr. 171), reported upon a host of pure medical findings pertaining to Ms. Brock and ultimately diagnosed her with the conditions of lupus and thyroiditis secondary to lupus. However, nowhere within these documents does Dr. Ballard express her opinion about the impact of Ms. Brock's impairments in vocational terms. Relatedly, Dr. Ballard's examination

---

[9] As explained above, the ALJ's decision is debatable concerning which of Ms. Brock's impairments he actually found to be severe. *See* n.5, *supra*.

records do not include a physical capacities evaluation of Ms. Brock. Instead, Dr. Ballard's consultative findings are rawly reported without drawing any vocational conclusions, and Dr. Ballard's complete silence about Ms. Brock's vocational abilities is not evidence that Dr. Ballard believes that "no restrictions on the claimant's ability to perform work related activities" are appropriate, as the ALJ suggested. Rather, the report from Dr. Ballard is entirely inconclusive from a vocational standpoint.

More specifically, Dr. Ballard gives no indication about Ms. Brock's ability to lift or other exertional/non-exertional restrictions much less makes a recommendation on the range of work she is physically capable of performing given her diagnoses of lupus and thyroiditis. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted). Also, there is no suggestion that Dr. Ballard's assessment of Ms. Brock included any mental component.

Therefore, the records from Dr. Ballard do not provide substantial evidence that Ms. Brock is capable of performing a reduced range of sedentary work with

certain non-exertional limitations.  Moreover, the court has been unable to locate (and

Defendant has not pointed to (*see generally* Doc. 10)) a medical source opinion[10] or

a physical or mental capacities evaluation conducted by a physician that substantiates

Ms. Brock is capable of performing a reduced level of sedentary work or delineates

any of the vocational restrictions that the ALJ found to be appropriate.  *See, e.g.,*

*Rohrberg*, 26 F. Supp. 2d at 311 (D. Mass. 1998)  ("The ALJ failed to refer to-and

this Court has not found-a proper, medically determined RFC in the record.").

Additionally, the ALJ "placed little weight" on the one medically-based

opinion provided by Dr. Porter about Ms. Brock's inability to work given his mental

assessment of her.  (Tr. 26).  In doing so, the ALJ reasoned that the "evidence

received at the hearing level shows that the claimant is less limited than determined

by the state agency consultant."  (Tr. 27).  However, certainly no evidence of any

competing medical opinion indicating that Ms. Brock's ability to work in light of her

mental health is "less limited" than what Dr. Porter vocationally opined, exists in the

record.

Furthermore, both the mental RFC (Tr. 190-93) and physical RFC (Tr. 194-

---

[10]  "Medical source statements are 'medical opinions submitted by acceptable
medical sources, including treating sources and consultative examiners, about what
an individual can still do despite a severe impairment(s), in particular about an
individual's physical and mental abilities to perform work-related activities on a
sustained basis.'"  SSR 96-5p.

201) assessments that were prepared on Ms. Brock were completed by non-physician, medical consultants, *i.e.*, Steven Dobbs (Tr. 192) and Barry Slatton (Tr. 201), respectively.   The ALJ did not assign any weight to these reports as part of his decision and instead observed:

> A state agency disability specialist, rather than a physician, determined the claimant's physical residual functional capacity at the initial level. Therefore no assessment of that opinion is required under SSR 96-6p.

(Tr. 31 (emphasis added)).   Accordingly, neither non-licensed state agency prepared RFC provides substantial evidence in support of the ALJ's RFC determination.

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined that the claimant was able to perform her past relevant work without the benefit of a physical capacities evaluation conducted by a physician:

> While the Record contains Ms. Rogers' medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996).   In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required.   *Id.*   In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations.

> Further, Ms. Rogers' ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Brock's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. Moreover, the lack of a supportive medically-determined RFC regarding Ms. Brock's mental abilities is particularly critical here when the ALJ has rejected the one vocational opinion contained in the record that was favorable to Ms. Brock in the context of a consultative mental assessment.

Therefore, in the absence of a medical source statement and/or a physical and

mental capacities evaluation conducted on Ms. Brock by a physician that substantiates her ability to perform a sedentary work with certain non-exertional restrictions, the record has not been adequately developed.  *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Relatedly, the ALJ's determination that Ms. Brock can perform a reduced range of sedentary work is not supported by substantial evidence.  Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.   Accordingly, the decision of the Commissioner will be remanded by separate order.

15

**DONE** and **ORDERED** this the 11th day of May, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge